Argued April 8, affirmed May 27, 1924.

# STATE v. WALTER B. JONES.

(226 Pac. 433.)

**Contempt—Attorney Held in Contempt in Attempting to Remove Witnesses from Jurisdiction—"Interference."**

1. An attorney, who urged a mother to absent her children, who were witnesses from the jurisdiction, paying, as inducement, money on a note he owed her, and transportation for a son to accompany the children, though they returned and testified, was guilty of constructive contempt at common law and as defined by Section 670, Or. L., and not an attempt only; "interference" within the statute meaning "act, process, or state of interfering" or "intermeddling."

**Contempt—"Contempt" Defined.**

2. He is guilty whose conduct, whether attorney, court officer, witness or others, is such as tends to bring the authority and administration of the law into disrespect or disregard, or to interfere or prejudice parties litigant, or their witnesses, during litigation.

**Contempt—Affidavit Held Sufficient.**

3. Affidavit *held* to state facts constituting contempt.

From Lane: JOHN S. COKE and G. F. SKIPWORTH, Judges.

---

1. Aiding, procuring or advising disobedience to subpoena as contempt, see note in 18 **Ann. Cas.** 319.

Department 2.

The defendant, Walter B. Jones, was adjudged guilty of contempt and appeals from the judgment. The proceeding was instituted by filing the following affidavit:

"State of Oregon,
    County of Lane,—ss.

"I, Edith Luick, being first duly sworn, say that I am the mother of Earl Luick, Dorothy Luick and Adnah Luick;

"That on April 6, 1921, an information was filed in the office of Jesse G. Wells, Justice of the Peace in and for Eugene Justice's District, Lane County, Oregon, charging George Stone with the crime of contributing to the delinquency of Adnah Luick, a minor child of the age of eight years; that said George Stone was arrested and brought before said Jesse G. Wells, as examining magistrate, and waiving a preliminary examination, was bound over to the Grand Jury of Lane County, Oregon; that thereafter and on the 15th day of May, 1921, said Grand Jury returned an indictment against the said George Stone for the said crime of contributing to the delinquency of the said Adnah Luick;

"That the said George Stone retained Walter B. Jones, an attorney-at-law of Lane County, Oregon, to defend him upon the trial of said indictment; that thereafter, on or about the 1st day of October, 1921, and before the trial of said cause, said Walter B. Jones informed me that he was going to defend said George Stone at the said trial, and further informed me that the testimony of said Adnah Luick and Dorothy Luick would be used against his client, the said George Stone, and suggested that I take the said two girls out of this jurisdiction and into the state of California; that at the time of said proposal said Walter B. Jones owed me the sum of $500.00, evidenced by a promissory note, and he suggested that he would pay me the said sum if I would take the said girls to California; that he thereafter de-

livered to me ten cords of wood of the value of
$72.00, and the receipt of that amount was indorsed
on the back of said note;

"That several times thereafter, both in my home
and in his office in Eugene, Lane County, Oregon,
the said Walter B. Jones urged me to take the said
girls to California; that I finally told him that I
could not go and he thereupon suggested that my son,
Earl Luick, take the girls to California; that Earl
Luick consented to do so and secured railroad passes
for himself and said girls from Eugene, Oregon, to
Oakland, California, and on the 7th day of October,
1921, said Walter B. Jones gave me a check for $225,
and on the 8th day of October, 1921, he gave Earl
Luick a check for $275, endorsing on said note under
date of October 8, 1921, the payment of $429.50,
and instructed said Earl Luick to take $65.00 of the
money received on said check of $275.00 to cover his
traveling expenses to Oakland, California; that on
October 9, 1921, Earl Luick took the said two girls
to Oakland, California, and remained there about two
weeks, when he returned with the said girls to Eu-
gene, Oregon;

"That on the 3rd day of March, 1922, after a
trial duly had in the circuit court of the state of
Oregon, for Lane County, the said George Stone
was convicted of the said crime of contributing to
the delinquency of the said Adnah Luick, a minor,
and said Adnah Luick and Dorothy Luick testified
at said trial in behalf of the state of Oregon; that
the said testimony of Adnah Luick and Dorothy
Luick was necessary to secure a conviction of the
said trial."

The defendant answered the affidavit and admitted
that he was attorney for George Stone, who is men-
tioned in the affidavit; and the said George Stone was
convicted; and that Adnah Luick and Dorothy Luick
were witnesses upon the trial of the said Stone;
and denied all the other statements in the affidavit.
The cause was tried before two circuit judges, and

findings of fact made and filed, and a judgment entered declaring defendant guilty of contempt. A fine of $100 was imposed.

The defendant assigns error, that the affidavit does not state facts sufficient to constitute an offense, and that there is not sufficient evidence to sustain the judgment.                                        AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. A. C. Woodcock* and *Mr. L. Bilyeu.*

For respondent there was a brief and oral argument by *Mr. C. N. Johnston.*

BEAN, J.—1. The defendant claims that the evidence introduced at the trial, if taken as true, would not come within the provisions of the statute relating to contempt proceedings. This claim is based largely upon the testimony of Edith Luick, the mother of the girls, which is claimed to be to the effect that she wanted the children, who were witnesses in the case of *State* v. *Stone* (Or.), 226 Pac. 430, to go to California, because their grandmother was there; that Edith Luick testified that she had no intention at any time of not having the girls, whom the defendant is charged with having spirited away, here in Lane County to testify; and that the district attorney knew this.

It clearly appears from the evidence in the case that the defendant was at the time attorney for George Stone, who was charged with the crime of contributing to the delinquency of a minor child of the age of eight years; that after George Stone had been held to answer to the grand jury by the committing magistrate, and before he was indicted by the grand jury, and also after the indictment was re-

turned, the defendant solicited, advised and urged Mrs. Edith Luick, the mother of the two girls, who were witnesses in the case against Stone, to take or send the girls out of the jurisdiction of the State of Oregon and into the State of California; and that as an inducement to Mrs. Luick to do so, the defendant paid $435 on a note which he was owing to Mrs. Luick, and furnished $65 to pay the expenses of Earl Luick, brother of the girls, to accompany them to the State of California. By a former arrangement with the railroad company Mrs. Luick could obtain passes for the transportation of the girls over the Southern Pacific Railroad.

The gist of the claim of the defendant in this respect is that his efforts to prevent the witnesses from testifying in a criminal action against Stone were unsuccessful. He did, however, succeed in sending the witnesses out of the jurisdiction of the court, and to that extent endangered the efforts of the state to procure the witnesses at the trial of the case against Stone. This was calculated to affect the right of the state and tended to impede, obstruct and embarrass the court in the administration of the law. The defendant evidently intended that his efforts, in preventing the attendance of the witnesses, should have such an effect. The fact that the district attorney was informed by Mrs. Luick of the efforts of the defendant Jones to spirit the witnesses away would not lessen or change the acts of the defendant.

It is claimed on behalf of defendant that the acts of Jones in sending the girls out of the State of Oregon amounted to only an attempt to interfere with the process or proceeding had, or to be had, in the court and not to a contempt.

Our statute, Section 670, Or. L., defines contempts, in so far as material to the present case, thus:

"that the following acts or omissions, in respect to a court of justice, or proceedings therein, are deemed to be contempts of the authority of the court:— * *

"3. Misbehavior in office, or other willful neglect or violation of duty, by an attorney, clerk, sheriff, or other person appointed or selected to perform a judicial or ministerial service;

"4. Deceit, or abuse of the process or proceedings of the court, by a party to an action, suit, or special proceeding; * *

"8. Unlawfully detaining a witness or party to an action, suit, or proceeding, while going to, remaining at, or returning from the court where the same is for trial;

"9. Any other unlawful interference with the process or proceedings of a court";

This Section was amended by General Laws of Oregon of 1924, page 236, Chapter 165, but not changed in its application to the present case. Interference is defined as an "act, process, or state of interfering." The word often is used in the sense of intermeddling: 33 C. J. 267.

Our statute, in defining contempt in respect to unlawful interference with the process or proceeding in a court of justice, is largely, if not entirely, declaratory of the common law. In Underhill on Crim. Ev. (3 ed.), Section 657, the law is laid down thus:

"A willful and corrupt attempt to prevent the attendance of a witness before a lawful tribunal is an offense at common law. The essence of the offense is the attempt to interfere with and obstruct the administration of justice. No physical act of intervention is necessary to constitute the crime, but it may be committed by persuasion, advice or threats. At common law it need not be proved that the witness was under a subpoena, that he was called in

behalf of either party, or that his evidence was material.''

At the common law, and now frequently by statute, in many of the states, any attempt to retard or to prevent the attendance of witnesses called to testify in either civil or criminal proceedings, is a misdemeanor. It is immaterial that the attempt was unsuccessful: Underhill on Crim. Ev. (3 ed.), § 401.

It is stated in 13 C. J. 38, Section 51, in substance as follows: In general it is contempt to · prevent the attendance of witnesses who have been duly subpoenaed, to advise a witness to absent himself from court, or to induce, or attempt to induce him to go beyond the jurisdiction of the court. In the case of *Montgomery* v. *Muskegon Circuit Judge*, 100 Mich. 436 (59 N. W. 148), the syllabus reads:

''The contention that the attempt to prevent the attendance of one not yet subpoenaed as a witness is not a contempt of court, under How. Stats., § 7257, subd. 4, which provides for the punishment of any person guilty of unlawfully detaining any witness to a suit while going to, remaining at, or returning from the court where such suit shall be noticed for trial,· is untenable.''

See *Clements* v. *Williams*, 2 Scott, 814 (30 E. C. L. 677). In the latter case it is held that to keep a material witness out of the way and thereby impede the service of a subpoena is a contempt.

2. It is apparent that questions of contempt may be linked with an unlimited number of subjects, such as the duties and privileges of attorneys and officers of the court generally, witnesses, and others. He is guilty of contempt whose conduct is such as tends to bring the authority and administration of the law into disrespect or disregard, or to interfere or preju-

dice parties litigant or their witnesses during the litigations. Contempts are classified as direct or indirect, and as criminal or civil; a direct contempt is such as is offered in the presence of the court while sitting judicially; and an indirect or, as it is sometimes called, a constructive contempt, is such as tends by its operation, though not committed in court, to obstruct and embarrass or prevent the due administration of justice: 6 R. C. L. 488, § 1.

Proceedings for contempts, which are prosecuted to preserve the power and vindicate the dignity of the courts and to punish for disobedience of their orders, are criminal and punitive in their nature and the government, the courts and the people are interested in their prosecution. The defendant is charged with an indirect or constructive criminal contempt: 6 R. C. L. 490, § 3. A public or criminal contempt is precisely defined and barred by the statutory enumeration, where there is such a statute: 1 Wharton, Crim. Ev. (10 ed.), 710, § 350; *Trullinger* v. *Howe,* 58 Or. 73 (113 Pac. 4).

The court, in the administration of justice, necessarily possesses the inherent power to protect itself against reprehensible conduct such as unlawful or corrupt interference with witnesses. In order for a court to maintain its efficiency in the administration of justice, it must exercise such power to prevent the unlawful meddling with the proceedings pending before it and especially the interference with witnesses: 6 R. C. L. 515, § 28; 1 Wharton, Crim. Ev. 708, § 349.

3. The contention that the affidavit does not state facts sufficient to constitute an offense or crime is untenable. The testimony in the case supports the substance of the affidavit. As shown by the record,

there was no inducement by the district attorney for the defendant to procure the departure of the witnesses from the state. The defendant had already violated the statute before the district attorney was informed in regard to the matter. He had solicited, advised and urged the removal of the witnesses from the state. There was no consent on the part of the district attorney to the interference by the defendant with the administration of justice. The defendant's efforts were not in any way influenced by what the district attorney said or did. It is apparent that Jones knew nothing about the information the district attorney had until a long time afterward.

Defendant planned and carried out all of the proceedings relating to the transportation of the prosecuting witnesses from Oregon to California. The fact that the unlawful acts of the defendant in keeping the two girls out of the State of Oregon and from attending court were frustrated does not exculpate him. His conduct was in plain violation of the law of this state, which he well understood. The acts of the defendant unquestionably constituted an unlawful interference with the proceeding pending in the Circuit Court, namely, the case of the *State of Oregon* v. *Stone,* and come squarely within subdivision 9, Section 670, Or. L. They were also in violation of the spirit, if not the letter, of subdivision 8 of that Section. The conduct of the defendant amounted to more than an attempt,—it was a complete contempt.

The defendant had the benefit of a fair trial by the two circuit judges, and the penalty imposed was moderate. The findings of fact made by the judges are amply supported by the evidence. The testimony shows, and the court found *inter alia* as follows:

"8. The court further finds that on the 7th day of October, A. D., 1921, the said Walter B. Jones paid to the said Edith Luick the sum of $275, evidenced by a check, State's 'Exhibit B' herein, which said check was cashed by the said Edith Luick.

"9. The court further finds that on October 8, 1921, the said Walter B. Jones paid to Earl Luick, the son of Edith Luick, the sum of $225, evidenced by a check therefor, State's 'Exhibit C' herein, and which said check was cashed by Edith Luick and Earl Luick.

"10. The court further finds that $435 of the amount paid by the two checks ($500) was credited by the said Walter B. Jones on the 8th day of October, 1921, on the back of said note, $429.50 being credited as payment of principal and $5.50 thereof being credited as payment of interest, and that said credit and endorsement of said note was made by the said Walter B. Jones himself."

The judgment of the Circuit Court is affirmed.

AFFIRMED.

McBRIDE, C. J., and BROWN and McCOURT, JJ., concur.